# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **SUZANNE RON, et al.,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**JOHN ZAVITSANOS, et al.,**<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:19-cv-00979-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants John Zavitsanos ("Zavitsanos"), Collin Kennedy ("Kennedy"), Hanshaw Kennedy Hafen, LLP ("HKH"), and Ahmad, Zavitsanos, Anaipakos, Alavi, & Mensing, P.C.'s ("AZA") (collectively "Defendants") Motion to Dismiss the Plaintiffs' Suzanne Ron ("Suzanne") and Joshua T. Tillerson's ("Tillerson"), trustee of the Suzanne Ron 2012 Family Trust ("the Trust") (collectively "Plaintiffs"), Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. The court held a hearing on the motion on March 17, 2020. At the hearing, Jared D. Scott and Andrew R. Hale represented the Plaintiffs and Mark F. James and Mitchell A. Stephens represented Defendants. The court took the motion under advisement. After carefully considering the memoranda filed by the parties and the law and fact relevant to the pending motion, the court issues the following Memorandum Decision and Order.

## Background

Defendants are lawyers and law firms located in Texas. Plaintiffs retained Defendants while Suzanne was living in Texas and serving as the trustee of the Trust. Suzanne hired Defendants to handle her divorce from her ex-husband, Avishai Ron ("Avi"). This divorce

proceeding occurred entirely in Texas, and a Texas court awarded Suzanne a Decree of Divorce and a property equalization judgment (the "Equalization Judgment"). After the entry of judgment, Suzanne—individually and as trustee of the Trust—hired AZA to collect the Equalization Judgment, to achieve a separation and division of the Trust's interest, and to pursue Avi for damages related to his suspected defalcation of Trust assets.

When Suzanne, individually and as trustee of the Trust, hired AZA, she executed an engagement agreement. Plaintiffs' Complaint states that the engagement agreement "does not contain a venue provision." Defendants, however, state that the engagement agreement contains the following forum selection clause: "[a]ll actions or proceedings arising out of or relating to this engagement shall be heard and determined in Texas state or federal court sitting in Harris County, to whose jurisdiction all parties to this engagement letter irrevocably and exclusively submit." In their opposition papers, Plaintiffs dispute the validity and materiality of the quoted forum selection clause. Additionally, HKH joined Suzanne's legal team shortly after AZA filed the suit against Avi. The parties disagree on whether HKH is bound by and required to perform according to the engagement agreement Suzanne and the Trust signed with AZA.

In March 2017, AZA and HKH filed a complaint in Texas against Avi on behalf of Suzanne and the Trust. The complaint alleged Avi had misappropriated and wasted Trust assets and sought an accounting of Trust assets, damages, and a TRO preventing Avi from disposing of certain Trust assets. The Texas court granted the TRO in June 2017, allowing AZA and HKH to pursue the accounting needed from Avi. The court also appointed a "trust protector," Murray Fogler ("Fogler"), during the pendency of the litigation, thus replacing Suzanne as trustee of the Trust. Fogler, acting as the trustee of the Trust, never signed an agreement with AZA or HKH.

In October 2017, as Fogler was attempting to obtain a forensic accountant to evaluate the value of the Trust's assets, Suzanne and Avi agreed to mediate in Texas with a Texas attorney as mediator. Suzanne believed the mediation would primarily focus on child custody problems that had arisen during the litigation. She was surprised when the mediation focused on the financial issues involving the Trust lawsuit and the pursuit of the Equalization Judgment given that Fogler did not attend the mediation. Plaintiffs complain the mediation was a "set up."

The October 2017 mediation lasted over 18 hours, ended at around 3:30 a.m., and culminated in a written mediation settlement agreement (the "MSA"). All parties to the mediation signed the MSA. There are five provisions in the MSA that are relevant to Plaintiffs' malpractice and fraud claims against Defendants.

First, the MSA purports to sell Avi the Trust's interest in certain business entities for the "previously stipulated values incorporated into the Final Decree of Divorce." The problem is, however, that Plaintiffs allege there are no "previously stipulated values incorporated into the Final Decree of Divorce." Plaintiffs contend this error has spurred—and will continue to spur—costly debate over the value of the business entities.

Second, the MSA also purports to sell Avi the entities "Loadcraft Site Services" ("Loadcraft") and "[F]MFD Victoria 267" ("FMFD Victoria"). The Loadcraft entity, however, was no longer in the Trust's possession, because a third-party company had purchased the entity in 2014 in exchange for that company's stock. The value of that stock grew substantially between 2014 and the October 2017 mediation. Kennedy admits the Loadcraft provision should not have been included and asserts it was a "'last minute trick insertion' by Avi." Plaintiffs further allege that the FMFD Victoria entity should not have been included in the MSA because Avi did not control it.

Third, the MSA would reduce the amount Avi owed Suzanne from the equalization judgment from $13.5 million to $8.5 million. Additionally, the MSA would dissolve the receivership and the Equalization Judgment would be completely settled.

Fourth, Plaintiffs allege, without any specific provision quoted, that the general release provision was so poorly drafted that it has the potential to allow Avi to be released from claims asserted by the Rons' children's trust against Avi in a separate lawsuit. The application of the general release provision has yet to be determined by any court.

Fifth, the MSA includes arbitration and venue provisions. Under these provisions, the parties agreed that any disputes regarding the MSA must be arbitrated in Harris County, Texas by Alan Levin–the Texas attorney who presided over the October 2017 mediation where the MSA was drafted.

Shortly after the MSA was signed, the performance of the MSA became an issue between Avi and Suzanne. Avi filed a motion to compel Suzanne to arbitration in June 2018. In October 2018, the Texas court ordered all non-family disputes to arbitration in Texas according to the MSA's venue provision.

Late in October 2017, shortly after the mediation and while the MSA disputes were ongoing in Texas courts, Suzanne moved to Utah with her son. Her move was with Defendants' full knowledge and according to a provision in the MSA. Despite Suzanne's move, Defendants agreed to continue to represent her and did not advise her to seek local counsel. Since moving to Utah, Suzanne and Defendants have exchanged hundreds of emails regarding MSA problems, Trust asset questions, child custody issues, and the formation of a Utah business to transfer stock (known as ICON). Defendants sent bills to Suzanne in Utah for their work, Suzanne pays those bills from Utah.

For months after the move, Plaintiffs allege Defendants encouraged Suzanne to ratify the Trust's obligations under the MSA, act as the trustee of the Trust, and sign sales and partnership agreements affecting the Trust. Defendants allegedly encouraged such action even though it was disputed whether Suzanne could act as the trustee at that point. This uncertainty has been the point of litigation in both Utah and Texas.

After moving to Utah, Suzanne asked Defendants if she should obtain a second opinion about her duties, responsibilities, and potential liabilities as trustee, and Defendants specifically told her not to do so. Plaintiffs complain Defendants' advice not to seek a second opinion was reckless behavior because when Suzanne eventually obtained a second opinion, the law firm made clear that: (1) Suzanne could be liable if she sold Trust assets at lower than market value or unnecessarily encumbered the Trust's assets; and (2) the sale or encumbrances of Trust assets to Avi may have harmed the Trust and potentially made her liable as trustee.

Defendants also allegedly purported to act on behalf of the Trust and convey assets to Avi with no authority from Suzanne or Fogler. Plaintiffs complain of two such instances. First, Kennedy—purportedly on Suzanne's and the Trust's behalf—agreed with Avi's attorneys on a provision that allowed Avi to receive income and distributions from the Trust's business entities without returning anything to the Trust. This alleged agreement has allowed Avi to receive millions in distributions from business entities that should have gone to the Trust. Specifically, on December 20, 2017, Kennedy allegedly told Suzanne that she needed to sign a document that would enable Avi to encumber the Trust's interest in 6010 Washington (a highly valuable Trust asset). Suzanne signed the agreement at Kennedy's alleged insistence. Second, in November 2017, Defendants allegedly agreed to Avi's purchase of his children's 25% beneficiary interest in the Trust.

In May 2019, Suzanne and the Trust began to arbitrate the enforceability of the MSA. The arbitrator has yet to issue a decision on the matter. Despite the unsettled nature of the MSA, Plaintiffs filed the present suit against Defendants.

On October 15, 2019, Plaintiffs filed the instant action against Defendants in Utah State court. In their Complaint, Plaintiffs assert four causes of action: (1) legal malpractice for professional negligence; (2) legal malpractice for breach of fiduciary duty; (3) breach of contract; and (4) fraudulent concealment or fraudulent non-disclosure. In December 2019, Plaintiffs removed the case to this court and filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## DISCUSSION

### Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendants move to dismiss Plaintiffs' Complaint for lack of personal jurisdiction over Defendants in Utah. Plaintiffs have the burden of demonstrating that the court has jurisdiction over Defendants. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

To defeat a motion to dismiss, a plaintiff must make a prima facie showing of personal jurisdiction. *Old Republic Ins. v. Cont'l Motors, Inc.* 877 F3d 895, 903 (10th Cir. 2017). To determine jurisdiction, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Utah's long-arm statute extends jurisdiction to the fullest extent allowed by the Due Process Clause of the Fourteenth Amendment and is, therefore, coextensive with the due process analysis under the United States Constitution. Utah Code § 78B-3-201(3).

A defendant's contacts with a forum state may subject it to general or specific jurisdiction in that forum. *Old Republic*, 877 F.3d at 904. A court may exercise general jurisdiction over a defendant if the defendant's contacts "are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler*, 571 U.S. at 122. In this case, Plaintiffs do not assert that this court may exercise general jurisdiction over Defendants. Accordingly, the court will consider only whether this forum has specific jurisdiction over Defendants.

The court's analysis of specific jurisdiction is case-specific. *Old Republic*, 877 F.3d at 904. Courts in the Tenth Circuit conduct a three-part analysis when considering specific jurisdiction: (1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of jurisdiction would be unreasonable. *Id.* In this case, Plaintiffs argue that Defendants' alleged attempts to cover up the alleged malpractice demonstrates that Defendants purposefully directed their tortious omissions and concealment at Utah and that the Plaintiffs' fraud claims arise out of those activities. Defendants contend that their alleged concealment or omissions do not satisfy the purposeful direction or minimum contacts requirements.

The purposeful direction requirement is meant to ensure that an out-of-state defendant "'will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person.'" *Id.* at 904–05 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). There are multiple types of activities that can satisfy the purposeful direction requirement, but the relevant inquiry for this case is under the harmful effects framework. *Id.* at 905. The United States Supreme Court addressed the harmful effects criteria in *Walden v. Fiore,* 517 U.S. 277, 286–91 (2014).

In *Walden v. Fiore*, the Supreme Court articulated the framework courts should use to analyze specific jurisdiction "when intentional torts are involved." *Id.* at 286. According to the Supreme Court, the existence of an intentional tort does not change the due process analysis courts use to determine whether a defendant purposefully directed its activities to the forum state. *Id.* The Court emphasized that the purposeful direction test is not "defendant-focused" and that no matter how "significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* at 284–85 (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). Simply put, "[t]he plaintiff cannot be the only link between the defendant and the forum." *Id.* Given this framework from *Walden*, to establish purposeful direction when an intentional tort is alleged, a plaintiff must show "(1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." *Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1223, 1231 (10th Cir. 2020) (citing *Newsome v. Gallacher*, 722 F.3d 1257, 1264–65 (10th Cir. 2013)).

In this case, Plaintiffs have satisfied the first prong of the three-part harmful effects test by alleging fraudulent concealment or omission. Thus, the only issues to be decided are whether Plaintiffs' expressly aimed the alleged tortious conduct at Utah, knowing that the brunt of that injury would be felt in Utah.

Plaintiffs argue that Defendants have purposefully directed tortious conduct to Utah by fraudulently attempting to cover up the alleged malpractice and, therefore, purposefully availed themselves of jurisdiction in Utah. Specifically, Plaintiffs assert the following as a sufficient basis to establish jurisdiction over Defendants in Utah: (1) Defendants agreed to continue representing Suzanne after her move to Utah; (2) while Suzanne was in Utah, Defendants

pressured her via emails, phone calls, and text messages to sell Trust assets to Avi; (3)

Defendants failed to disclose potential malpractice and or conflicts of interest both before and

after Suzanne moved to Utah; (4) while in Texas, Suzanne hired Defendants to get Suzanne and

her son away from Texas and to Utah, and Defendants aggressively advocated for that objective;

(5) Defendants were aware that Suzanne owned property in Utah before the MSA was executed

and knew Suzanne spent time there; (6) Defendants were aware that Suzanne owned property in

Utah related to the underlying Equalization Judgment; (7) regarding the Texas arbitration of the

MSA, Defendants exchanged documentation with and prepared Suzanne for the proceeding

while she was in Utah, and Defendants filed pleadings in the Texas arbitration; and (8)

Defendants helped Suzanne with questions about her formation of a Utah business to transfer

stock (an entity known as ICON).

Many of these allegations relate to *Plaintiffs'* contacts with Utah. But, any attempts by

Plaintiffs' to rely on their own contacts with Utah to establish jurisdiction over Defendants' in

Utah are unavailing. *See Walden*, 571 U.S. at 284. Nonetheless, Plaintiffs' allegations of

Defendants alleged fraudulent concealment or omissions are potentially relevant to establishing

personal jurisdiction over Defendants in Utah.

To support their argument that Defendants' alleged tortious conduct is sufficient to

establish jurisdiction in Utah, Plaintiffs rely on *Wien Air, Inc. v. Brandt,* 722 F.3d 1257 (5th Cir.

1999) and *Diamond Mortg. Corp. of Illinois v. Sugar,* 913 F.2d 1233 (7th Cir. 1990). In

response, Defendants argue that those cases are not binding on the court and are no longer

persuasive after the *Walden* opinion in 2014. The court agrees. *See Dental Dynamics, LLC v.*

*Jolly Dental Group, LLC*, 946 F.3d 1223, 12132 (10th Cir. 2020) (noting in dicta that the court

was not persuaded by plaintiffs' attempt to rely on two cases decided before *Walden* to establish

personal jurisdiction over defendants). Accordingly, the court will not address the merits of these cases because *Walden* sets forth the correct framework for establishing minimum contacts when an intentional tort is involved. *See Walden*, 571 U.S. at 286.

Defendants further argue that under *Walden,* their alleged fraudulent omissions and their agreeing to continue representing Suzanne after moving to Utah are insufficient to establish personal jurisdiction over Defendants because those actions were directed at the Plaintiffs, not Utah. The court agrees that because Defendants' alleged tortious conduct was only directed to Plaintiffs, and the alleged injuries would only be felt by Plaintiffs, such allegations are insufficient to establish jurisdiction over Defendants in Utah. A recent Tenth Circuit opinion supports this conclusion. *See Dental Dynamics*, 946 F.3d 1223 (10th Cir. 2020).

In *Dental Dynamics*, the plaintiff owned and operated a business in Oklahoma brokering deals for buyers and sellers of used dental equipment. *Id.* at 1226–27. The defendant used plaintiff's company to sell an X-Ray unit from Arkansas through the plaintiff's company in Oklahoma to a third-party in California. *Id.* The defendant sent an electronic bill of sale to plaintiffs in Oklahoma, stating that the X-Ray unit was in perfect working condition and the defendant had included all the necessary parts. *Id.* During this transaction, the parties exchanged emails, text messages, phone calls, and the plaintiff sent defendant a check for the transaction. *Id.* at 1227. The defendant, however, lied about the working condition of the X-Ray unit in emails and the bill of sale. *Id.* Upon learning the X-ray unit did not work nor have all parts included, the plaintiff sued for breach of contract and fraud in Oklahoma, arguing that the defendant's fraudulent communications into Oklahoma establish jurisdiction there. *Id.* The Tenth Circuit did not find these facts sufficient to establish personal jurisdiction in Oklahoma. *Id.* at 1229. Relying on *Walden* and other cases, the Tenth Circuit held that "a defendant's interaction with a

plaintiff—even when allegedly tortious—is insufficient to establish personal jurisdiction." *Id.* at 1231–32 (collecting cases).

The court is also persuaded by Defendants' reliance on *REI Holdings, LLC v. LineClear-001, LLC*, No. 2:17-CV-00564, 2019 WL 498356 (D. Utah Feb 8, 2019). In *REI Holdings*, the plaintiff, a Utah company, hired the defendant, a law firm in Connecticut, to "purchase portfolios of tax lien certificates." *Id.* at *1. During the parties' business relationship, the companies exchanged dozens of emails, including status updates and requests for information. *Id.* at *6. When these tax lien certificates turned out to be essentially worthless, the plaintiff sued the defendant and other businesses alleging fraud. *Id.* at **1–2. Specifically, the plaintiff alleged the communications between it and the law firm were an effort to perpetuate fraud and that the plaintiff would feel the brunt of the fraud in Utah. *Id.* at **2, 6. Relying on *Walden*, Judge Waddoups disagreed and dismissed the claims against the law firm because the plaintiffs could not demonstrate the alleged fraudulent actions were "expressly aimed at Utah. Rather [the defendant's] actions were aimed at [the plaintiff]." *Id.* at *6-7.

*Dental Dynamics* and *REI Holdings* specifically govern and inform the present case. Here, Plaintiffs' only argument to establish jurisdiction over Defendants rests on the alleged fraudulent concealment and omissions directed at Plaintiffs, not Utah. These contacts are insufficient because they "fail to show [Defendants] had any connections with [Utah] outside of the allegedly fraudulent misrepresentations and isolated incidents of outreach to [Plaintiffs]." *Dental Dynamics*, 946 F.3d at 1232. Notably, all of Defendants' alleged connections with Utah—including the alleged concealment or omissions—are due to their attorney-client relationship with Plaintiffs, which relationship began in Texas and never included any interaction with the state of Utah. Thus, because the "[Plaintiffs] cannot be the only link between the

[Defendants] and the forum," this court concludes the Plaintiffs have not carried their burden to establish personal jurisdiction over Defendants in Utah. *Walden*, 571 U.S. at 285.

Because of Defendants' lack of minimum contacts with the State of Utah, the court does not need to address the parties' arguments regarding fair play and substantial justice. Accordingly, the court grants Defendants' motion to dismiss for lack of personal jurisdiction.

## CONCLUSION

Based on the above reasoning, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.

DATED this 14th day of April, 2020.

BY THE COURT

_____
DALE A. KIMBALL
United States District Judge